No. 99-514

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 122N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

NANETTE D. JOHNSON,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad L. Arndorfer; Arndorfer Law Firm, Billings, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jim Wheelis,

Assistant Attorney General; Helena, Montana

Dennis Paxinos, Yellowstone County Attorney; Sheila R. Kolar,

Deputy County Attorney, Billings, Montana

Submitted on Briefs: February 17, 2000
Decided: May 4, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Nanette D. Johnson (Johnson) was charged in the Thirteenth Judicial District Court, Yellowstone County, with criminal possession of dangerous drugs, a felony in violation of § 45-9-102, MCA. Johnson filed a motion to suppress evidence. The District Court denied the motion. Johnson then entered a plea of guilty, reserving her right to appeal the court's denial of her motion to suppress.

¶3 The issue on appeal is whether the District Court erred in concluding that, independently of the overbroad search incident to arrest, the contraband in question would inevitably have been found in a subsequent inventory search at the Yellowstone County Detention Center.

### *Factual Background*

¶4 On August 19, 1998, Laurel City Police Officer Michael Zuhoski (Officer Zuhoski) and Reserve City Police Officer Lauren Dionne (Officer Dionne) were on patrol in Laurel, Montana. While driving through the parking lot of the Town Pump, Officer Zuhoski recognized Johnson whom he had previously arrested on warrants. Officer Zuhoski then checked with dispatch to see whether there were any outstanding warrants against Johnson and was told that a "must appear" warrant had been issued against her on a traffic offense. Bond had been set at $80.

¶5 The officers entered the Town Pump and asked Johnson to step outside. When she did, she was placed under arrest pursuant to a "must appear" warrant. She was handcuffed and Officer Dionne did a pat-down search, finding two cigarette packages. A third officer, Officer Weinreis, had arrived on the scene and pointed to a bulge in Johnson's sock whereupon Officer Dionne retrieved a third cigarette package. Inside the third cigarette package Officer Zuhoski found a bindle and a baggie, the contents of which later tested positive for methamphetamine. Johnson was then transported to the Yellowstone County Detention Center (YCDF).

¶6 Officer Zuhoski testified it was the Laurel Police Department's policy to take persons arrested on "must appear" warrants to the Laurel Police Department or the YCDF to be booked and fingerprinted. He testified that it was not policy to accept bond money before arrest and booking. Officer Zuhoski further testified that he checked for contraband each time he made an arrest, but that he had no cause to suspect that Johnson was "involved in any additional criminal activity."

## *Standard of Review*

¶7 Because the pertinent facts are not in dispute, we review whether the District Court correctly applied the law in denying Johnson's motion to suppress. *See* State v. Anderson, 1999 MT 60, ¶ 7, 293 Mont. 490, ¶ 7, 977 P.2d 983, ¶ 7.

## *Discussion*

¶8 In addressing Johnson's motion to suppress, the District Court concluded that Johnson's arrest was valid. However, the District Court determined that Officer Zuhoski's search of the inside of the cigarette package exceeded the scope of a search incident to an arrest under § 46-5-102, MCA. Nonetheless, the District Court concluded that the contraband inside the cigarette package would have been inevitably discovered during a routine

inventory search at the YCDF. The court cited State v. Pearson (1985), 217 Mont. 363, 704 P.2d 1056, for the proposition that inevitable discovery is an exception to the exclusionary rule.

¶9 In *Pearson*, we alluded to the "inevitable discovery" exception to the exclusionary rule. The exception, however, was not applied or discussed in resolution of the *Pearson* appeal. The exception was first recognized by this Court in State v. Allies (1979), 186 Mont. 99, 117-18, 606 P.2d 1043, 1052-53. In *Allies*, we recognized that:

> There are three general exceptions to exclusion of the fruit of the poisonous tree. (1) If the evidence is attenuated from constitutional violation so as to remove its primary taint, it will be admissible. (2) If the evidence is obtained from a source independent of the defendant's confession, it will be admissible. (3) If it is inevitable that the evidence would have been discovered apart from the defendant's confession, it is admissible.

*Allies, 186 Mont. at 117, 606 P.2d at 1052-53 (citations omitted).*

¶10 We then elaborated certain limitations in invoking the inevitable discovery exception.

> In applying the third exception, the inevitable discovery rule, courts must not lose sight of the protections guaranteed by the Constitution. To avoid deciding cases on a judge's speculation as to what police "might," "could" or "should" have done, it must appear that the evidence *would* have been obtained even in the absence of information received in violation of a defendant's rights. It must appear that, as certainly as night follows day, the evidence would have been discovered without reference to the violation of the defendant's rights.

*Allies, 186 Mont. at 118, 606 P.2d at 1053.*

¶11 The District Court reasoned that, while conducting booking and fingerprinting, jail personnel are "allowed" to do routine inventory searches. State v. Pastos (1994), 269 Mont. 43, 887 P.2d 199. Further, the District Court noted that this Court has determined that inventory searches of open cigarette packages are lawful as part of an inventory search. City of Helena v. Lamping (1986), 221 Mont. 370, 719 P.2d 1245 (inventory search prior to placing in jail). In light of the breadth of the authority to conduct inventory searches, the District Court concluded "it was inevitable that the contraband in the open

package would have been found during a routine inventory search at YCDF. This inevitable discovery cuts off any taint that was associated with the illegal search [incident to arrest]."

¶12 We determine that, in grounding its decision on what the law "allows," the District Court ran afoul of the limitations expressed in *Allies*. The fact that the officers may have had legal authority to engage in an inventory search during a routine booking, merely establishes what the officers "might," "could" or "should" have done. *See Allies*, 186 Mont. at 118, 606 P.2d at 1053. Bearing in mind that Johnson was arrested on an outstanding warrant arising from a traffic offense with a bond of $80, it does not follow that the contraband necessarily "would" have been discovered. Officer Zuhoski testified that, when making an arrest such as this, he can take the arrestee to either the YCDF or to the station in Laurel, where there is no longer a jail. Thus, although he in fact took Johnson to YCDF, he could have taken her to Laurel. Further, he testified that, at either facility, arrestees are booked in and allowed to post bond if they can.

¶13 Despite an officer's legal authority to conduct inventory searches, we cannot conclude "as certainly as night follows day" that it is inevitable that every person who is arrested on an outstanding traffic warrant and taken to a facility (particularly a facility with no jail) will be subjected to a complete inventory search wherein a cigarette pack will be removed from his/her sock and opened for inspection before that person is given the opportunity to post bond.

¶14 We hold that, under the facts of this case, the District Court incorrectly invoked the inevitable discovery exception. The Order denying the motion to suppress is reversed and this matter is remanded to the District Court for further proceedings consistent herewith.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER